AMERICREDIT FINANCIAL SERVICES, INC.,

Plaintiff,

VERSUS

OXFORD MANAGEMENT SERVICES,

Defendant.

───────────────

MEMORANDUM AND ORDER
September 18, 2008

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff AmeriCredit Financial Services, Inc. (hereinafter, "AmeriCredit" or "plaintiff") commenced this action seeking to confirm an Arbitration Award pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Defendant Oxford Management Services (hereinafter, "OMS" or "defendant") cross-moves to vacate the Arbitration Award. Specifically, OMS alleges that the arbitrator (1) exceeded his powers in dismissing defendant's counterclaim, and (2) manifestly disregarded the law by ignoring evidence and drawing an adverse inference against the defendant. The Court disagrees and, for the reasons set forth below, the Court grants AmeriCredit's motion to confirm the arbitration award and denies OMS's cross-motion to vacate the arbitration award.

I. BACKGROUND

A. Facts

The facts are taken from the record submitted by the parties and are undisputed unless otherwise noted.

1. The Recovery Services Agreement

On November 1, 2004, AmeriCredit and OMS entered into a Recovery Services Agreement ("RSA") under which AmeriCredit retained OMS to perform collection activities on certain of AmeriCredit's delinquent accounts. (Petition ¶ 6; Pl.'s Exh. A ("RSA").) Section 14 of the RSA requires, among other things, that the parties resolve any dispute that could not be resolved by negotiation through final and binding arbitration in accordance with the

American Arbitration Association (hereinafter, "AAA"). (RSA, at 9.) Specifically, Section 14 provides as follows:

> Any dispute arising out of or related to this Agreement, which cannot be resolved by negotiation, must be settled by final and binding arbitration in accordance with the American Arbitration Association ("AAA") Rules and Procedures. The cost of arbitration, including fees and expenses of the arbitrator, will be shared equally by the parties unless the arbitration award provides otherwise. Each party will bear the costs of preparing and presenting its case. The parties agree that this provision and the arbitrator's authority to grant relief is subject to the United States Arbitration Act, 9 U.S.C. 1-16 ET SEQ. ("USAA"), THE PROVISIONS OF THIS agreement, and the ABA-AAA Code of Ethics for Arbitrators in Commercial Disputes. The parties agree that the arbitrator has no power or authority to make awards or issue orders of any kind except as expressly permitted by the Agreement, and in no event may the arbitrator have the authority to make any award that provides for punitive or exemplary damages. The Arbitrator's decision must follow the plain meaning of the relevant documents, and will be final and binding. The award may be confirmed and enforced in any court of competent jurisdiction. All post-award proceedings will be governed by the USAA. This provision should not be construed so as to prohibit either party from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

(RSA, at 9.)

2. The Dispute

The following dispute formed the basis for the arbitration:

By correspondence dated August 4, 2006, AmeriCredit terminated the RSA, which would become effective August 8, 2006. (Stipulation of Uncontested Facts ¶ 25; Maider Aff., Pl.'s Exh. B.) OMS received notice of the August 4, 2006 termination on August 7, 2006. (*Id.* ¶ 26.) The notice directed OMS to cease all collection activities as of August 8 and make arrangements to return all accounts to AmeriCredit. (*Id.* ¶¶ 27-28.) The parties subsequently agreed that, notwithstanding the termination date, OMS would continue to service certain accounts (the "Retained Accounts") where OMS had either existing debtor promises to pay or debtor post-dated checks on the account.[1] (*Id.* ¶¶ 29-31.)

---

[1] The parties created a document entitled the "Keeper List" on or about August 10, 2006 which incorporated all debtor accounts on which Oxford had established "active payment arrangements" as of that date. (*Id.* ¶¶ 29-30.)

On October 26, 2006, AmeriCredit discovered that OMS continued to collect on recalled accounts. (*Id.* ¶ 37.) By letter dated October 26, 2006 (the "October 26 Letter"), AmeriCredit instructed OMS to cease collection efforts on the Retained Accounts and demanded that OMS remit all payments to AmeriCredit. (*Id.* ¶ 38.) The October 26 Letter also stated that AmeriCredit would not pay any commissions to Oxford on funds received on the Retained Accounts after October 26, 2006. (*Id.* ¶ 39.)

AmeriCredit and OMS were unable to consensually resolve a dispute regarding money due and owed under the Recovery Services Agreement for the period of time between August 8, 2006 and October 26, 2006.

### 3. The Arbitration

On December 14, 2006, AmeriCredit filed a Demand for Arbitration (the "Demand") against OMS with the AAA, seeking the recovery of monies due and owing under the RSA. (*See* Petition to Confirm ¶ 9; Pl.'s Exh. B.) AmeriCredit alleged that OMS breached the RSA by, among other things, (a) failing to remit money due and owing to AmeriCredit as required by the RSA; (b) settling collection accounts for less than 50% of the customer debt without written approval from AmeriCredit as required by Section 4 of the RSA; (c) improperly collecting on customer accounts after termination of the RSA; and (d) subjecting AmeriCredit to customer liability for unlawful collection practices under state and federal law. (*Id.*) OMS filed a counterclaim alleging that certain of the sum due to AmeriCredit should be "set-off" by money owed to OMS.[2]

The parties chose the Honorable Richard D. Simons (hereinafter, "the arbitrator") out of a roster of proposed arbitrators submitted by the AAA. (Petition to Confirm ¶ 11; Pl.'s Exh. C.) Following the appointment of the arbitrator, AmeriCredit requested and was granted permission by the arbitrator for the parties to take deposition testimony of potential fact witnesses prior to the arbitration hearing. (Def.'s Vacate Mem., at 2.)

---

[2] On December 26, 2006, AmeriCredit also filed a complaint in federal district court seeking a judgment "enjoin[ing] and restrain[ing] OMS . . . from taking any action to pursue [any] collection of AmeriCredit accounts." (Def.'s Vacate Mem., at 2.); *AmeriCredit Fin. Servs, Inc. v. Oxford Mgmt Servs.*, 06 CV 6772. Prior to this Court's determination on AmeriCredit's request for injunctive relief, the parties entered into a written stipulation dated January 5, 2007 (hereinafter, the "Stipulation"), wherein OMS agreed to "maintain and preserve all [existing] documents it created and/or received from third parties . . . includ[ing] computer generated records and data." (*See* Stipulation, dated Jan. 5, 2007.) Furthermore, OMS agreed "to allow AmeriCredit to perform an audit, under Section 13 of the Agreement." (*Id.*) This Court "So Ordered" the Stipulation on January 5, 2007. (*Id.*)

3

a. The Motion to Dismiss the Counterclaim

On May 1, 2007, AmeriCredit moved to dismiss OMS's counterclaim, pursuant to N.Y.C.P.L.R. 3126(2) and(3), based upon the spoilation of evidence.[3] AmeriCredit argued that defendant destroyed the financial records of its activities when the RSA was in force and in the months following the termination of the agreement. By decision dated June 25, 2007 (the "June 25 Decision"), the arbitrator granted AmeriCredit's motion to dismiss defendant's counterclaim. (*See* June 25 Decision to Dismiss, Def.'s Exh. E.) Specifically, the arbitrator found, based upon the written submissions, that OMS "knowingly destroyed records necessary to resolve the disputes between the parties." (*Id.* at 2.)

b. The Arbitration Hearings

With respect to AmeriCredit's claims, Arbitrator Simons held hearings on July 30 and 31, 2007. (Petition to Confirm ¶ 13.) Both parties were present and offered evidence at those hearings. (*Id.*) Simons issued his arbitration award dated September 7, 2007 (hereinafter, the "Arbitration Award"), in which he awarded AmeriCredit monetary damages in the amount of $449,993.38.[4] (Petition to Confirm ¶ 14, Pl.'s Exh. E ("Arbitration Award"), at 2.) In making the Arbitration Award, the arbitrator "t[ook] into consideration that Oxford violated its obligations under the contract in several respects." (Arbitration Award, at 2.) Specifically, the arbitrator found that:

> Oxford has failed to transmit meaningful records of its activities following termination of the contract, thereby frustrating AmeriCredit's attempt to reconcile the records and Oxford's claims, that its employees deliberately

---

[3] CPLR 3126 states, in relevant part:

> If any party . . . refuses to obey an order for disclosure or wilfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:
>
> 2. an order prohibiting the disobedient party from supporting or opposing designated claims or defenses, from producing in evidence designated things or items of testimony, or from introducing any evidence of the physical, mental or blood condition sought to be determined, or from using certain witnesses; or
>
> 3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.

N.Y.C.P.L.R. 3126(2), (3).

[4] The total damages were based upon the following calculations:
    (a)    Amount due on contract: $411,191.78;
    (b)    Pre-judgment interest under New York law: $29,588.65; and
    (c)    Cost of arbitration: $9,212.95.

4

destroyed records that could have resolved the parties' competing claims (and misled AmeriCredit about the destruction of such records), that it did so with the intention of frustrating AmeriCredit's claim and that it has improperly retained in its private accounts funds legally belonging to AmeriCredit in violation of its contract obligations. Accordingly I have resolved disputed questions of fact against Oxford.

(*Id.*)

The Arbitration Award constitutes a complete and final determination of all claims submitted to arbitration pursuant to the RSA. (Petition to Confirm ¶ 14.) AmeriCredit alleges that OMS has indicated that it does not intend to satisfy the Arbitration Award. (Pl.'s Mem., at 2.)

B. Procedural History

On September 20, 2007, AmeriCredit filed a motion in this Court seeking a judgment to confirm the Arbitration Award. On November 6, 2007, OMS cross-moved to vacate the Arbitration Award. AmeriCredit filed opposition papers to defendant's cross-motion on November 27, 2007. Defendant filed a reply on December 5, 2007.[5]

II. STANDARD OF REVIEW

The FAA represents a strong federal policy favoring arbitration agreements. "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, – U.S. – , 128 S.Ct. 1396, 1402 (Mar. 25, 2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The enforcement of arbitration awards is guided by Section 9 of the FAA. Section 9 provides, in pertinent part:

> [A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. . . ."

9 U.S.C. § 9.

Confirmation of an arbitration award under Section 9 of the FAA is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the

---

[5] Plaintiff also filed a sur-reply on December 7, 2007. However, by letter dated December 10, 2007, defendant objected to plaintiff's sur-reply on the grounds that the Court had not included it in the briefing schedule. Plaintiff asked that it be stricken or defendant should be provided with an opportunity to respond. None of the information or arguments contained in plaintiff's sur-reply are necessary for the Court's determination on the pending motion to confirm and cross-motion to vacate. Thus, the Court has not relied upon anything contained in that sur-reply and defendant's objection is moot.

5

award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdienier*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted). It is well settled in the Second Circuit that a district court's review of an arbitration award under the FAA is extremely deferential. *See Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (stating that a district court's review of an arbitration award is very limited, "in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Accordingly, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair*, 462 F.3d at 110. Confirming an award requires "[o]nly a barely colorable justification for the outcome reached." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).[6]

A party seeking vacatur of an arbitration award "bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Section 10(a) of the FAA authorizes a district court to vacate an arbitration award:

(i) where the award was procured by corruption, fraud, or undue means;
(ii) where there was evident partiality or corruption in the arbitrators, or either of them;
(iii) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(iv) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Hoeft, III v. MVL Group, Inc.*, 343 F.3d 57, 63-64 (2d. Cir. 2003). These Section 10(a) statutory bases represent "egregious departures from the parties' agreed-upon arbitration." *Hall Street Assocs.*, 128 S.Ct. at 1404. Therefore, "the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987); *see also Nat'l Bulk Carriers, Inc. v. Princess Mgmt. Co.*, 597 F.2d 819, 825 (2d Cir. 1979) ("[O]nly clear evidence of impropriety justifies denial of summary confirmation.") (internal quotations omitted).

The Second Circuit has recognized an additional, but rarely used, ground not prescribed in the statute: a "manifest disregard of the law." *See Porzig*, 497 F.3d at 139 (stating that courts will "vacate an award only upon finding a violation of one of the four

---

[6] Defendant's contentions that the Court should apply a *de novo* standard of review are misplaced. The Court is not aware of any basis for applying such a standard of review, and defendants have not cited any basis for doing so.

6

statutory bases [enumerated in Section 10(a) of the FAA], or, more rarely, if we find a panel has acted in manifest disregard of the law"); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986) ("'Manifest disregard of the law' by arbitrators is a judicially-created ground for vacating their arbitration award [that] was introduced by the Supreme Court in *Wilko v. Swan*. It is not to be found in federal arbitration law.") (citations omitted).

However, in the recent case of *Hall Street,* the Supreme Court explicitly held that the aforementioned statutory grounds for vacatur under the FAA are exclusive. *See Hall Street Assocs.,* 128 S. Ct. at 1403 ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). In reaching that decision and concluding that the statutory grounds could not be supplemented by contract, the Supreme Court noted that some Circuits, including the Second Circuit, have interpreted the Supreme Court's earlier decision in *Wilko v. Swan,* 346 U.S. 427 (1953) as "recognizing 'manifest disregard of the law' as a further ground for vacatur on top of those listed in § 10." *Id.* The Court attributed this development in the case authority to "the vagueness of *Wilko*'s phrasing" and then clarified that no separate grounds for vacatur exist beyond the enumerated grounds found in the FAA:

> [T]he text compels a reading of the §§ 10 and 11 categories as exclusive. . . . [E]xpanding the detailed categories would rub too much against the grain of the § 9 language, where provision for judicial confirmation carries no hint of flexibility. On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

*Id.* at 1405. The Court added that, "[i]nstead of fighting the text, it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* at 1405 (quotations and citations omitted). Thus, the Court concluded that, "whatever the consequences of our holding, the statutory text gives us no business to expand the statutory grounds." *Id.* at 1406.

Although the Second Circuit has not had the opportunity to address the standard since *Hall Street*, it is clear that *Hall Street* abrogates prior Second Circuit case authority holding that, under *Wilko*, "manifest disregard of the law" is a separate, judicially-created ground for vacatur. *See, e.g, Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 07 Civ. 11403 (RJH), 2008 WL 2662015, at *4 (S.D.N.Y. July 7, 2008) ("As the Second Circuit's traditional understanding of *Wilko* and § 10 – that *Wilko* endorsed manifest

disregard and that § 10's grounds are not exclusive – is inconsistent with the basis for the holding in *Hall Street*, the Court finds that the manifest disregard of the law standard is no longer good law."); *see also Ramos-Santiago v. United Parcel Serv.,* 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in *Hall Street* . . . that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act ('FAA').") (citation omitted); *Rogers v. KBR Technical Servs. Inc.,* No. 08-20036, 2008 WL 2337184, at*2 (5th Cir. June 9, 2008) ("The Supreme Court has recently held that the provisions of the FAA are the exclusive grounds for expedited vacatur and modification of an arbitration award, which calls into doubt the non-statutory grounds which have been recognized by this Circuit. However, because we affirm the district court and hold that the arbitration award is confirmed, there is no need in the instant case to determine whether those non-statutory grounds for vacatur of an arbitration award remain good law after *Mattel*.") (citation omitted).

However, in the wake of *Hall Street*, some courts have viewed "manifest disregard of law" as simply a judicial interpretation of the enumerated Section 10 requirements rather than as a separate ground for review and, thus, have continued to apply it.[7] *See, e.g., Mastec*

*N.A., Inc. v. MSE Power Sys., Inc.,* No. 1:08-CV-168, 2008 WL 2704912, at *3 (N.D.N.Y. July 8, 2008) ("The Supreme Court's holding in *Hall Street* limits the application of 'manifest disregard of the law' to the Section 10 bases. Accordingly, this Court will view 'manifest disregard of law' as judicial interpretation of the Section 10 requirements, rather than as a separate standard of review, and will resort to existing case law to determine its contours.") (citations and footnote omitted).

In an abundance of caution, because the Second Circuit has not addressed this issue since *Hall Street* and because it may continue to apply its "manifest disregard of the law" jurisprudence in the context of analyzing whether the enumerated factors have been met, this Court will analyze defendant's "manifest disregard" argument on the merits under the Second Circuit legal framework (in addition to defendant's other contentions) and, for the reasons set forth below, finds each of defendant's arguments, including its claim of "manifest disregard of the law," to be without merit.

### III. DISCUSSION

#### A. Motion to Vacate the Arbitration Award

OMS moves to vacate the Arbitration Award under Section 10(a) of the FAA on two grounds: that the arbitrator (1) exceeded his authority by dismissing Oxford's counterclaim on motion prior to the arbitration hearing; and (2) manifestly disregarded the law in rendering his Arbitration Award. The

---

[7] The *Hall Street* Court noted this possibility in referencing the ambiguity in *Wilko*'s language. *See Hall Street*, 128 S. Ct. at 1404 ("Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them.") (citing *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 431 (2d Cir. 1974)).

Court finds both of OMS's arguments to be unavailing for the reasons set forth below.

### 1. Arbitrator Did Not Exceed His Authority in Dismissing Counterclaim

Defendant argues that the arbitrator exceeded his powers by dismissing OMS's counterclaim on motion prior to the arbitration hearing. Specifically, OMS contends that the June 25 Decision dismissing the counterclaim was tantamount to a sanction, fine or penalty that is disallowed under the RSA. The Court disagrees.

"An arbitrator exceeds his powers when he 'rule[s] on issues not presented to [him] by the parties.'" *Hoeft, III v. MVL Group, Inc.*, 343 F.3d 57, 71 (2d Cir. 2003) (quoting *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 515 (2d Cir. 1991) (citation and quotation marks omitted)); 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings" to the FAA's authorization to vacate awards pursuant to § 10(a)(4). *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted). Section 10(a)(4) of the FAA "focuses on whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator [] correctly decided that issue." *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). "Where the arbitrator goes beyond that self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." *Porzig*, 497 F.3d at 140.

Section 14 of the RSA states, in relevant part,

> The parties agree that the arbitrator has no power or authority to make awards or issue orders of any kind *except as expressly permitted by the Agreement*, and in no event may the arbitrator have the authority to make any award that provides for punitive or exemplary damages.

(RSA, at 9) (emphasis added). Defendant first argues that the arbitrator did not have the power to dismiss the counterclaim because that authority was not expressly granted under the arbitration provision. That argument is completely unsupported by the record. The arbitrator's authority to dismiss defendant's counterclaim falls squarely within the plain language of Section 14 of the RSA, which vests the arbitrator with the authority to resolve "*[a]ny dispute* arising out of or related to this Agreement." (*Id.*) (emphasis added). Defendant's counterclaim, relating specifically to defendant's alleged entitlement to the recovery of funds under the RSA, is precisely the type of dispute the arbitrator was permitted to resolve under the RSA and arises directly from the interpretation of the RSA. It is axiomatic that "[w]here an arbitration clause is broad . . ., arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself." *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003). Here, the arbitration clause broadly allows the arbitrator to resolve any claim arising out of the RSA. Therefore, because the counterclaim clearly arose out of the RSA, the arbitrator did not exceed his authority under the RSA in addressing and dismissing the counterclaim.

9

Defendant alternatively argues that the arbitrator exceeded his powers in dismissing the counterclaim because doing so amounted to a penalty, which defendant contends is explicitly prohibited by the RSA. As a threshold matter, it is entirely unclear that the arbitrator dismissed the counterclaim solely as a sanction for defendant's undisputed destruction of material evidence relating to such claim. Even though the motion to dismiss was based upon spoilation of evidence by defendant, the arbitrator's decision to dismiss the counterclaim can be interpreted not only as a sanction for such destruction of evidence, but also a determination by him that defendant could not possibly meet its burden on the merits to support its counterclaim given the absence of the critical records that would be necessary to fairly evaluate that claim. *See, e.g., Synergy Gas Co. v. Sasso,* 853 F.2d 59, 66 (2d Cir. 1988) (holding that, although arbitrator found party had acted in bad faith and awarded attorney's fees, that finding "does not mandate the conclusion that the award was punitive" because it was meant to be compensatory); *Fairfield Towers v. Fishman,* No. 02 Civ. 6402 (RMB), 2003 WL 21738976, at *3 (S.D.N.Y. July 28, 2003) (holding that there was no basis for finding that damages awarded by arbitrator was punitive).

In any event, even assuming, as defendant argues, that the decision to dismiss was the result of a "sanction" for defendant's destruction of evidence, there is no language in the RSA that prevents an arbitrator from dismissing a claim on that basis. As noted above, the plain language of the RSA enables the arbitrator to resolve "any dispute arising out of or related to" the RSA. However, in support of its position, defendant relies on the limitation on the arbitrator's authority in the RSA that states that the arbitrator cannot "make any award that provides for punitive or exemplary damages." (RSA, at 9). Although defendant contends that the arbitrator's dismissal of the counterclaim runs afoul of this limitation, the Court disagrees. Defendant attempts to characterize the decision as punitive because it referenced defendant's destruction of critical records. However, even assuming that the dismissal was punishment or a sanction for such destruction, the above-referenced limitation is still not implicated because the decision had absolutely nothing to do with "punitive or exemplary damages." It is undisputed that the arbitrator's decision did not provide for punitive or exemplary damages of any sort.[8] Instead, the arbitrator rendered a decision dismissing defendant's counterclaim – a counterclaim that was directly related to a dispute arising out of the RSA Agreement – by making a determination, based upon the stipulated facts of the parties, that evidence necessary to the action was destroyed by defendant and that the spoilation of evidence was fatal to deciding defendant's counterclaim. Such a dismissal was not prohibited by the RSA.

In short, any contentions by defendant that such a dismissal was punitive in nature and not on the merits, and therefore outside the authority of the arbitrator, are irrelevant under the RSA and unsupported by legal authority. Regardless of whether the arbitrator dismissed defendant's counterclaim on the merits or as a procedural matter, that decision is within his

---

[8] In fact, the Court notes that the arbitrator refused to award attorney's fees because those fees were not provided for in RSA. *See* Arbitration Award, at 3 ("AmeriCredit is not entitled to attorney's fees because the contract does not provide for the award of attorney's fees in the arbitration of disputes between the parties.")). Therefore, the arbitrator clearly recognized the limits of his powers.

10

broad grant of authority under the RSA. Therefore, the arbitrator did not exceed his authority in dismissing defendant's counterclaim. *See, e.g., Ganguly v. Charles Schwab & Co., Inc.*, No. 03 civ. 6454 (PKC), 2004 WL 213016, at *1 n.1 (S.D.N.Y. Feb. 4, 2004) ("The arbitrators orally granted a motion to dismiss Mr. Charles R. Schwab as a party."); *Max Marx Color & Chem. Co. Employee's Profit Sharing Plan v. Barnes*, 37 F. Supp. 2d 248, 253 (S.D.N.Y. 1999) (dismissing ERISA claim for lack of standing).[9]

Finally, defendant argues that he was not afforded full and complete due process rights because the counterclaim was dismissed prior to the July 30-31, 2007 hearing. The Court finds that argument to be without merit. "'The lack of oral hearings does not amount to the denial of fundamental fairness required to warrant vacating the award' . . . so long as the arbitrator's decision to render a decision solely on documentary evidence is reasonable." *Cragwood Managers, L.L.C. v. Reliance Ins. Co.*, 132 F. Supp. 2d 285, 289 (S.D.N.Y. 2001) (quoting *Griffin Industries, Inc. v. Petrojam, Ltd.*, 58 F. Supp. 2d 212, 220 (S.D.N.Y. 1999)). In *Cragwood*, the arbitrator made an interim award based solely on the parties submissions without a formal oral hearing. 132 F. Supp. 2d at 289. The parties submitted extensive briefs and numerous exhibits and affidavits to the panel. *Id.* The district court denied the defendant's motion to vacate, finding that the "parties were given every opportunity to present evidence." *Id.* Here, defendant was similarly given the opportunity to fully brief the spoilation motion. Moreover, unlike *Cragwood*, the arbitrator held oral argument on the motion to dismiss. Defendant cites no law in support of the proposition that the arbitrator was obligated to resolve the motion to dismiss after an evidentiary hearing. As discussed above, arbitrators routinely decide motions to dismiss without evidentiary hearings. *See, e.g., Robert Lewis Rosen Assocs., Ltd. v. Webb*, – F. Supp. 2d –, 2008 WL 2662015, at *5 n.3 (S.D.N.Y. July 7, 2008) (concluding that arbitrator did not exceed his authority by granting a motion to dismiss); *see also Ganguly*, 2004 WL 213016, at *1 (granting motion to dismiss); *Max Marx Color*, 37 F. Supp. 2d at 253 (same). Accordingly, there is no basis for defendant to claim that he was not given a full and fair opportunity to contest the claim.

In sum, there is absolutely no evidence in the record to suggest that the arbitrator exceeded his authority by dismissing Oxford's counterclaim. The Arbitrator's decision to dismiss the counterclaim was soundly based upon the arbitrator's broad authority under the RSA's Arbitration clause to resolve "any dispute arising out of or related to this Agreement." Moreover, such authority existed even where the decision, either as a

---

[9] Moreover, Rule 43 of the AAA Commercial Arbitration Rules permits arbitrators to make interim, partial or interlocutory awards. Rule 43 empowers the arbitrator to grant "any remedy or relief . . . within the scope of the agreement of the parties . . ., including interim, interlocutory, or partial rulings, orders or awards." (Maider Aff., Exh. U.) Defendant's argument that the RSA arbitration clause does not incorporate by reference the AAA Commercial Arbitration Rules is meritless. Defendant cites no authority that arbitration agreements must explicitly incorporate the AAA rules in order for them to apply. Defendant's argument that the RSA did not explicitly allow for such interim relief is similarly meritless. (Def.'s Reply, at 4.) As discussed indepth above, the broad language of the RSA enables the arbitrator to resolve "any dispute" arising from the RSA. The arbitrator did just that in dismissing defendant's counterclaim.

punitive measure and/or a conclusion that defendant could not meet its burden on the merits, was based upon the defendant's destruction of critical evidence that was central to the analysis of the counterclaim on the merits. Accordingly, defendant's motion to vacate the arbitration award on the ground that the arbitrator exceeded his authority is denied.

### 2. Arbitrator Did Not Exhibit Manifest Disregard for the Law in Rendering the Arbitration Award

Defendant also argues that the arbitrator exhibited a manifest disregard for the law in rendering his Arbitration Award. As discussed below, even assuming *arguendo* that "manifest disregard" is a viable doctrine in some form despite the Supreme Court's decision in *Hall Street*, this ground does not provide a basis for vacatur under the circumstances of this case.[10]

It is well settled that, when considering "manifest disregard" as a ground for vacatur, "the reach of [this] doctrine is 'severely limited.'" *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (citations omitted). Vacatur under this ground is only appropriate when "'(1) the arbitrator knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator was well defined, explicit, and clearly applicable to the case.'" *Robert Lewis Rosen Assocs., Ltd.*, 2008 WL 2662015, at *4 (quoting *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64 (2d Cir. 2003). Moreover, an arbitrator's incorrect application of the law is not a sufficient reason for vacating an arbitration award. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (holding that a "federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law").

Defendant argues that the "arbitrator ignored and manifestly disregarded the 'plain meaning' of the relevant provisions of the parties' contract," (Def.'s Mem. at 10), in ruling that AmeriCredit possessed the right to terminate the agreement allowing OMS to collect on the Retained Accounts. Although defendant makes conclusory allegations throughout its papers that the arbitrator disregarded the terms of the RSA, defendant has not demonstrated that the arbitrator ignored any governing legal principle or express terms of the agreement. *See, e.g.*, *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 222 (2d Cir. 2002) (finding vacatur to be appropriate where "the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract"); *N.Y. Tel. Co. v. Commc'ns Workers of Am. Local 1100*, 256 F.3d 89, 93 (2d Cir. 2001) (holding that the arbitrator manifestly disregarded the law by "explicitly reject[ing]" binding Second Circuit precedent in favor of more recent decisions of other circuits.).

---

[10] The Court has analyzed defendant's motion to vacate the Arbitration Award not only as a motion under the "manifest disregard for the law" ground, but also on the ground that he "exceeded his authority" and, for the same reasons discussed below with regard to the "manifest disregard" analysis, also finds that he did not exceed his authority with respect to the Arbitration Award. In particular, for all the reasons discussed herein, it was well within the arbitrator's authority to interpret the RSA Agreement in connection with AmeriCredit's claims, as well as to consider OMS's destruction of evidence in deciding such claims.

Although defendant argues that the arbitrator radically departed from the terms of the RSA, there is no basis to support that contention. The only provision of the RSA that defendant references is Section 4B of the RSA, which states, in pertinent part:

> [¶2] Legal action will not be mandated without prior written consent of client for each individual case. Client must approve the use of any attorneys to be engaged by OMS under the Contract prior to engagement of any such attorneys.
>
> [¶3] OMS agrees to suspend action, either temporarily or permanently, on *any account upon receipt of such notification by the Client.*
>
> [¶4] If a debtor or his attorney disputes the account, collector, after conducting a good faith review of the legitimacy of the account dispute, will promptly notify Client of the dispute in writing. The Collector will immediately suspend collection activity in connection with said account. Upon receipt of notification of the nature of the dispute, Client will review the facts concerning the dispute and advise Collector in writing, at which time Collector may resume collection activity if so advised by Client.

(RSA, at 3) (emphasis added). Although defendant argues that there is nothing in Section 4B or paragraph 3 that authorizes AmeriCredit to "permanently suspend" all collection activity on accounts that have "active payment arrangements" already in place (*see* Def.'s Reply Mem., at 8), that argument is wholly unpersuasive. The arbitrator had more than a "colorable" basis for its interpretation of the RSA contract. Under New York law, a "contract should be interpreted so as not to render its terms nonsensical." *Interdigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005) (citing *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (N.Y. App. Div. 2003); *Fourth Branch Assocs. v. Niagara Mohawk Power Corp.*, 302 A.D.2d 780, 782 (N.Y. App. Div. 2003); *Reape v. N.Y. News, Inc.*, 122 A.D.2d 29, 30 (N.Y. App. Div. 1986)). In *Interdigital*, an arbitration revolved around the interpretation of a Master Agreement provision defining certain entities as "Major Competitor[s]." 407 F. Supp. 2d at 530. The district court found that there was "a legitimate basis for the [arbitration panel's] conclusion that Sony Ericsson is a Major Competitor" under the agreement. *Id.*

Similarly, in the instant case, defendant contends that there was no basis for the arbitrator to find that AmeriCredit correctly terminated the agreement with respect to the Retained Accounts. Paragraph 3 of the RSA explicitly provides that "OMS agrees to suspend action, either temporarily or permanently, on any account upon receipt of such notification by client [AmeriCredit]." (RSA, Section 4.) The RSA makes no distinction between active and non-active accounts, and defendant provides no basis for arguing that its active accounts should be somehow exempt. The record clearly reflects that the Arbitrator relied on Section 4B in upholding AmeriCredit's termination of the agreement regarding the Retained Accounts. Therefore, his Award is rationally supported

13

by the record and not in "manifest disregard" of the law.[11]

---

[11] The Court notes that defendant merges paragraphs two and three of Section 4 of the RSA (as labeled above) and argues that the "suspension of action" language refers solely to legal action, not to OMS's work on the accounts. For instance, defendant writes:

> *Legal action* will not be mandated without prior written consent of client for each individual case. Client must approve the use of any attorneys to be engaged by OMS under the Contract prior to engagement of any such attorneys. *OMS agrees to suspend action, either temporarily or permanently, on any account upon receipt of such notification by the client.*

(Def.'s Motion to Vacate, at 11) (emphasis added). That argument is misleading and contrary to the record. The two paragraphs are clearly distinct (as seen from the original RSA document). Section 4 of the RSA states:

> [¶2] Legal action will not be mandated without prior written consent of client for each individual case. Client must approve the use of any attorneys to be engaged by OMS under the Contract prior to engagement of any such attorneys.
>
> [¶3] OMS agrees to suspend action, either temporarily or permanently, on *any account* upon receipt of such notification by the Client.

(RSA, at 3.) Moreover, as discussed above, the arbitrator's explanation interpreting the RSA rationally justifies his conclusion and it is not this Court's role to disturb that explanation.

Defendant argues that the language of the RSA also was ambiguous as to whether OMS was required to stop all collections. The Court finds defendant's argument in that regard unsupported by the language in the RSA. However, even assuming that defendant is correct, such ambiguity is an insufficient basis for vacating an arbitration award on the grounds of "manifest injustice." *See Appel Corp. v. Katz*, No. 05-6697-cv, 2007 WL 419190, at *2 (2d Cir. Feb. 2, 2007) (denying defendant's motion to vacate on the grounds of "manifest injustice" because "an ambiguity existed in the contract sufficient to encompass the interpretation embodied in the [Arbitration] Award"); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (stating that a court should enforce any award in which "the arbitrator is even arguably construing or applying the contract"); *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23, 25 (2d Cir. 1997) (observing that "[i]nterpretation of . . . contract terms is within the province of the arbitrator" and so "[t]his court has generally refused to second guess an arbitrator's resolution of a contract dispute") (internal quotation marks omitted).

Here, assuming *arguendo* that the language of the contract was ambiguous, the language of the RSA could easily be interpreted as the arbitrator did in his Award. For instance, the arbitrator relied on Section 4, paragraph 3 in upholding AmeriCredit's termination of the agreement with respect to the retained accounts. (*See* Arb. Award, at 2; AmeriCredit's Exh. F) Specifically, the arbitrator concluded that:

> The date of termination was September 7, 2006. [The RSA] directed Oxford to cease all collection activities as of August 8 and make

> arrangements to return all accounts to AmeriCredit. Subsequently arrangements were agreed upon for Oxford to service some of the accounts notwithstanding the termination date. Nevertheless, all services were finally terminated October 26, 2006 in accordance with The Recovery Services Agreement (Section 4, B para 3).

(*Id.*) The arbitrator's explanation in the Arbitration Award provided far more than the "barely colorable justification for the outcome" required to enforce an award. *See, e.g., Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002) ("Interpretation of [a] contract term[] is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation.") (quoting *Yusuf Ahmed*, 126 F.3d at 25); *see also See Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199,* 116 F.3d 41, 45 (2d Cir. 1997) ("In contracting for arbitration of disputes . . . the parties bargained for a decision by the arbitrator, not necessarily a good one, and that is what they received."); *Folkways Music Publishers., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993) ("In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation."); *Robert Lewis Rosen Assocs.*, Ltd., 2008 WL 2662015, at *4 (denying motion to vacate on grounds of "manifest disregard" where defendant disagreed with arbitrator's interpretation). The Court declines to disturb the arbitrator's interpretation of the RSA under the circumstances of this case.

Finally, defendant contends that the arbitrator ignored evidence submitted at the hearing that was favorable to the defendant. Specifically, defendant argues that "the arbitrator apparently [] chose to ignore nearly all of the testimony and documentary evidence submitted at the hearing by drawing a conclusive adverse inference against the defendant." (Def.'s Motion to Vacate, at 11.) The Court finds defendant's arguments to be unavailing. First, to the extent that defendant's argument attacks the quality of the evidence underlying the arbitrator's determination, that argument is without merit. *See Mastec N. Am., Inc. v. MSE Power Sys., Inc.*, No. 1:08-CV-168, 2008 WL 2704912, at *8 (N.D.N.Y. July 8, 2008) ("'[T]he Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award.'") (quoting *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004) (internal quotation marks omitted)).

Furthermore, there is no basis for defendant's conclusory arguments that the arbitrator ignored the evidence. As a threshold matter, vacatur of an arbitration award on the basis that the arbitrator refused to hear evidence falls under Section 10(a)(3), which was not one of the bases argued by defendant in his petition. Even assuming *arguendo* that defendant argued such, defendant has not established that OMS would be entitled to vacatur on that basis. Under Section 10(a)(3), "an arbitration award will be vacated when the parties have agreed to a hearing yet one of the parties has been denied the opportunity to be heard, to present relevant evidence, or to cross-examine witnesses." *Mastec N. Am.*, 2008 WL 2704912, at *5 (citing *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19-20 (2d Cir. 1997) (vacating arbitration award pursuant to FAA § 10(a)(3) where arbitration panel refused to hear pertinent testimony)). Here, the arbitrator concluded that "Oxford has failed to establish that it is entitled to any

commissions on these accounts." (Arbitration Award, at 2-3.) In doing so, the arbitrator took "into consideration that Oxford violated its obligations under the contract in several respects." (*Id.* at 2.) Specifically, the arbitrator found that

> Oxford has failed to transmit meaningful records of its activities following termination of the contract, thereby frustrating AmeriCredit's attempt to reconcile the records and Oxford's claims, that its employees deliberately destroyed records that could have resolved the parties' competing claims (and misled AmeriCredit about the destruction of such records), that it did so with the intention of frustrating AmeriCredit's claim and that it has improperly retained in its private accounts funds legally belonging to AmeriCredit in violation of its contract obligations.

(*Id.*) There is no evidence that the arbitrator refused to hear evidence relating to the controversy. As discussed above, both parties were present at the two-day hearing and were entitled to offer evidence. There is no evidence that either party was denied the opportunity to be heard, to present relevant evidence, or to cross-examine witnesses. *See Mastec N. Am., Inc.*, 2008 WL 2704912, at *5 (denying motion to vacate where "there [was] no basis to conclude that [defendant] was deprived of the opportunity to cross-examine witnesses, present evidence, or conduct discovery"). Rather, defendant disagrees with the weight the arbitrator accorded the evidence, which, as discussed above, is not a valid reason for vacating an arbitration award under "manifest disregard."[12]

The record clearly reflects that the Arbitrator was more than justified in making his Arbitration Award. The record is replete with evidence that rationally supports the arbitrator's conclusion that OMS should not be entitled to any commissions where it knowingly and intentionally continued to collect on accounts after October 26, 2006 – even after AmeriCredit instructed OMS not to do so.[13] (Maider Aff., Exh. D, at 49.) Based

---

[12] For instance, defendant argues that the arbitrator erred by failing to give weight to the testimony of Craig Paterson ("Paterson"), AmeriCredit's Vice-President of Loss Recovery. However, as the Court explained *supra*, the Second Circuit does not recognize manifest disregard of the evidence as a valid grounds for vacatur of an arbitration award. *See Mastec N. Am., Inc.*, 2008 WL 2704912, at *8. In any event, the Court has carefully reviewed the portions of Paterson's testimony to which defendant points and concludes that the testimony, in the context of the record as a whole, would not warrant vacatur of the arbitration award even if manifest disregard of the evidence were a valid grounds for such vacatur.

[13] In summarizing such evidence, plaintiff attached a portion of the deposition transcript of Richard Pinto ("Pinto"), the Chairman of Oxford, admitting under oath that AmeriCredit customer account records were deleted in order to protect Oxford from legal exposure to AmeriCredit in this matter. Specifically, Pinto testified to the following:

> Q. There was a time when the Americredit records were purged. Do you recall when that purge took place?
>
> A. I would assume sometime in December.

16

upon a review of the submissions, there is certainly a colorable justification for the outcome reached by the arbitrator, and therefore, the arbitrator did not manifestly disregard the law. Accordingly, defendant's motion to vacate on the ground of "manifest disregard of the law" is denied.

---

> Q. Why were the Americredit records purged?
>
> A. Because it saved the firm from exposure.
>
> Q. Could you be more specific?
>
> A. It was my understanding that – I had a conference with Sal Spinelli, and he explained to me that two or three accounts had come through the process regardless of the fact that we shut it down, et cetera, et cetera. In order to protect ourselves from both federal debt collection law and our own ex-client, who had been making allegations that we had been continuing our collection efforts, the simplest fashion I knew was to purge it so the information was no longer available. That is subsequent to providing all of the financial records to our former client.

(Maider Aff., Exh. D., at 49-50.) However, the Court is aware that defendant objects to the Court's consideration of Pinto's testimony on the grounds that it was not part of the record of the arbitration proceedings. Therefore, in an abundance of caution, the Court has not taken Pinto's testimony into account for purposes of the instant motion. As stated *supra*, the Court has concluded – separate and apart from Pinto's testimony – that the arbitrator's decision was rational and wholly supported by the record in this case.

In sum, there are no grounds for vacating the Arbitration Award or the dismissal of the counterclaim and, thus, the motion to vacate is denied.

### B. Motion to Confirm the Arbitration Award

Upon the denial of a motion for vacatur, the Court must confirm an arbitration award. *See* 9 U.S.C. § 9 ("[U]pon an application for an order to confirm an arbitration award, the court must do so unless the ward is vacated, modified, or corrected under § 10 or § 11."); N.Y.C.P.L.R. § 7511 ("[U]pon the denial of a motion to vacate or modify, [the court] shall confirm the award."); *D.H. Blair & Co.*, 462 F.3d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected."). Therefore, the Arbitration Award is confirmed and reduced to a judgment. *See* 9 U.S.C. § 9.[14]

---

[14] To the extent that plaintiff also seeks costs and disbursements in connection with this proceeding, the Court denies such application. Although defendant's position was rejected by the Court, there has been no showing of bad faith, vexatious litigation, or any other ground for the granting of costs and/or disbursements in this action.

IV. CONCLUSION

For the reasons set forth above, AmeriCredit's motion to confirm the arbitration award in the amount of $449,993.38, pursuant to 9 U.S.C. § 9, is hereby granted and OMS's motion to vacate the arbitration award is denied. Judgment will be entered on this award pursuant to Federal Rule of Civil Procedure 54(b).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 18, 2008
Central Islip, NY

\* \* \*

The attorneys for the plaintiff are Jonathan D. Deily, Esq. and Richard Cromwell Maider, Esq. of Deily, Mooney & Glastetter, LLP, 8 Thurlow Terrace, Albany, NY 12203. The attorney for the defendants is John G. Poli, III, Esq., of John Poli P.C., 200 Laurel Ave, Northport, NY 11768.